**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEREMY TRAVIS WOODARD,** | : | |
| **Petitioner** | : | **No. 1:24-cv-01381** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **PA PAROLE BOARD, et al.,** | : | |
| **Respondents** | : | |

**MEMORANDUM**

Currently before the Court is pro se Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 in which he challenges his denial of parole. For the reasons set forth below, the Court will deny the petition, decline to issue a certificate of appealability, and direct the Clerk of Court to close this case.

## I. BACKGROUND

### A. Procedural Background

Pro se Petitioner Jeremy Travis Woodard ("Woodard") commenced this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254, an application for leave to proceed in forma pauperis ("IFP Application"), and a certified prison trust fund account statement, all of which the Clerk of Court docketed on August 16, 2024. (Doc. Nos. 1–3.) On September 4, 2024, the Court issued an Order which, inter alia, granted the IFP Application and directed Respondents to file a response to the habeas petition. (Doc. No. 5.) Respondents timely filed a response in opposition to the habeas petition on September 24, 2024. (Doc. No. 8.) In response, Woodard filed a "Motion to Object to Respondents [sic] Answer for [sic] Writ of Habeas Corpus." (Doc. No. 9.) As such, the habeas petition is ripe for disposition.

### B. Factual Background

On August 10, 2006, Woodard was sentenced to concurrent sentences of state incarceration for a minimum of one (1) year to a maximum of two (2) years, to be followed by

two (2) years' probation, after pleading guilty to possession of a controlled substance (35 P.S. § 780-113(a)(16)), simple assault (18 Pa. C.S. § 2701(a)(1)), and resisting arrest (18 Pa. C.S. § 5104) in the Court of Common Pleas of Cambria County. (Doc. Nos. 8 at 1; 8-1 at 4–7); Commonwealth v. Woodard, No. CP-11-CR-0001089-2006 (Cambria County Ct. Com. Pl. May 8, 2006) ("Woodard I").[1] On May 15, 2007, the Commonwealth of Pennsylvania Board of Probation and Parole ("Parole Board") denied Woodard parole based on (1) his need to participate in and complete additional institutional programs and (2) his "institutional behavior, including reported misconducts or community corrections residency failure." See (Doc. Nos. 8 at 1; 8-1 at 8–10). Later that same year, on September 13, 2007, the Parole Board again denied Woodard parole and indicated that he would serve his maximum sentence. (Doc. Nos. 8 at 1; 8-1 at 11–13). The Parole Board indicated that it denied Woodard parole because (1) he refused to accept responsibility for the offenses committed, (2) the Commonwealth of Pennsylvania Department of Corrections ("DOC") did not recommend parole, and (3) his poor institutional behavior. (Doc. No. 8-1 at 12).

Woodard served his maximum sentence and began his consecutive probationary sentence. On February 17, 2009, the trial court determined that Woodard violated the conditions of his probation, revoked his probation, and sentenced him to a period of state incarceration for a minimum of one year to a maximum of two years. See (Doc. Nos. 8 at 2; 8-1 at 14–17); Woodard I. Seven days later, the trial court sentenced Woodard to a period of incarceration for a

---

[1] The Court takes judicial notice of the docket sheet in Woodard's criminal cases referenced in this Memorandum, which are available through the Unified Judicial System of Pennsylvania Web Portal at https://ujsportal.pacourts.us/CaseSearch ("Portal"). See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).

minimum of two (2) days to a maximum of six months after pleading guilty to driving under the influence ("DUI") – high rate of alcohol (75 Pa. C.S. § 3802(b)). See (Doc. Nos. 8 at 2; 8-1 at 15); Commonwealth v. Woodard, No. CP-11-CR-0001671-2008 (Cambria County Ct. Com. Pl. Aug. 14, 2008) ("Woodard II").[2]

On September 20, 2010, the Parole Board denied Woodard parole and directed that he serve his maximum sentence of incarceration. (Doc. Nos. 8 at 2; 8-1 at 18–19.) The Parole Board stated that it had denied parole because of (1) Woodard's (a) "unacceptable compliance with prescribed institutional programs," (b) "institutional behavior, included reported misconducts," (c) "prior unsatisfactory parole supervision history," and (d) "failure to demonstrate motivation for success"; (2) the DOC's recommendation that he not receive parole; and (3) the trial judge's recommendation that he not receive parole. See (Doc. No. 8-1 at 19).

On July 5, 2018, Woodard was sentenced to period of state incarceration for a minimum of six (6) years to a maximum of twenty (20) years after pleading nolo contedere to conspiracy to commit aggravated assault – serious bodily injury (18 Pa. C.S. §§ 903, 2702(a)(1)). See (Doc. Nos. 8 at 2; 8-1 at 20–23); Commonwealth v. Woodard, No. CP-11-CR-0001247-2014 (Cambria County Ct. Com. Pl. June 30, 2014) ("Woodard III").[3] On December 4, 2019, the Parole Board denied Woodard parole. (Doc. Nos. 8 at 2; 8-1 at 24–26.) The Parole Board indicated that it denied parole because of (1) Woodard's (a) "need to participate in and complete additional institutional programs," (b) "institutional behavior, including reported county jail misconducts," (c) "risk and needs assessment indicating [his] level of risk to the community," (d)

---

[2] Woodard also pleaded nolo contendere to Public Drunkenness (18 Pa. C.S. § 5505) and received no further penalty. See (Doc. No. 8-1 at 17); Woodard II.

[3] Woodard also pleaded nolo contendere to DUI – general impairment (second offense) (75 Pa. C.S. § 3802(a)(1)) and was sentenced to a concurrent period of incarceration for a minimum of five (5) days to a maximum of six (6) months. See Woodard III.

"minimization/denial of the nature and circumstances of the offense(s) committed," and (e) "lack of remorse for the offense(s) committed"; (2) reports, evaluations, and assessments indicating that he was a risk to the community; and (3) the negative recommendations by the DOC and the prosecuting attorney. See (Doc. No. 8-1 at 25).

Almost a year after denying parole, on November 9, 2020, the Parole Board granted Woodard parole, and he was released from incarceration on December 30, 2020. (Doc. Nos. 8 at 2; 8-1 at 27–38.) On August 2, 2021, the Parole Board recommitted Woodard to serve six (6) months' state incarceration for technical parole violations which included using drugs, failing to abide by a curfew, and failing to refrain from entering establishments that sell or dispense alcohol. (Doc. Nos. 8 at 2; 8-1 at 39–42.) After his release from incarceration,[4] Woodard was charged with DUI – general impairment (second offense) and driving while his operating privilege was suspended or revoked (75 Pa. C.S. § 1543(a)) on March 21, 2022, and on August 29, 2022, he was sentenced to a period of incarceration for a minimum of three (3) months to a maximum of six (6) months, to be followed by six (6) months' probation. See Commonwealth v. Woodard, No. CP-11-CR-000452-2022 (Cambria County Ct. Com. Pl. May 5, 2022).

Because of these convictions, the Parole Board determined that Woodard was a technical parole violator and recommitted him to a state correctional institution to serve six (6) months' incarceration on September 6, 2022. (Doc. Nos. 8 at 2; 8-1 at 43–45.) The Parole Board also indicated that Woodard was not eligible for reparole until February 28, 2023, and his parole violation maximum date was November 15, 2034. (Doc. No. 8-1 at 42.)

---

[4] The Parole Board's August 2, 2021 decision to recommit Woodard included language indicating that he was to be automatically reparoled on January 12, 2022 without further action by the Parole Board. (Doc. No. 8-1 at 41.)

Since his reincarceration, the Parole Board has denied Woodard parole on three occasions. First, on January 3, 2023, the Parole Board denied Woodard parole because of his (1) "need to participate in and complete additional institutional programs," (2) "risk and needs assessment indicating his level of risk to the community," (3) "prior unsatisfactory supervision history," (4) "failure to demonstrate motivation for success," (5) "minimization/denial of the nature and circumstances of the offense(s) committed," (6) "refusal to accept responsibility for the offense(s) committed," (7) "lack of remorse for the offense(s) committed," and (8) reports, evaluations and assessments showing that he remained a risk to the community. See (Doc. Nos. 8 at 2; 8-1 at 46–48). Second, on January 5, 2024, the Parole Board denied Woodard parole because of his (1) "need to participate in and complete additional institutional programs," (2) "risk and needs assessment indicating his level of risk to the community," (3) "prior unsatisfactory supervision history," (4) "minimization/denial of the nature and circumstances of the offense(s) committed," (5) "refusal to accept responsibility for the offense(s) committed," and (6) reports, evaluations and assessments showing that he remained a risk to the community. See (Doc. Nos. 8 at 2; 8-1 at 49–51). Third, and finally, on June 20, 2024, the Parole Board denied Woodard parole due to his (1) "risk and needs assessment indicating his level of risk to the community," (2) "prior unsatisfactory supervision history," (3) "failure to demonstrate motivation for success," (4) "minimization/denial of the nature and circumstances of the offense(s) committed," (5) "refusal to accept responsibility for the offense(s) committed," (6) "lack of remorse for the offense(s) committed," and (7) reports, evaluations and assessments showing that he remained a risk to the community. See (Doc. Nos. 8 at 2; 8-1 at 52–54).

## II. LEGAL STANDARDS

### A. Challenges to Parole Denials Under Section 2254

A state prisoner's challenge to the denial of parole is cognizable under Section 2254. See Coady v. Vaughn, 251 F.3d 480, 486 (3d Cir. 2001) (determining that jurisdiction to entertain state prisoner's habeas petition challenging denial of parole lies under Section 2254 and not 28 U.S.C. § 2241). However, a federal district court may not grant parole or determine parole eligibility. See Billiteri v. U.S. Bd. of Parole, 541 F.2d 938, 944 (2d Cir. 1976). Instead, "[t]he only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody."[5] See id.; see also Bridge v. U.S. Parole Comm'n, 981 F.2d 97, 105 (3d Cir. 1992) (explaining that "the relief a court may grant [from a parole denial] is limited").

### B. Due Process Challenges to Parole Denials[6]

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." See U.S. Const. amend. XIV § 1. "[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the

---

[5] As stated above, Woodard requests to either be released from incarceration or receive a new parole hearing. See (Doc. No. 1 at 14). Woodard may not obtain his release through these habeas proceedings because, as explained here, his only available relief is a new parole hearing absent the alleged constitutional violations. Therefore, the Court considers Woodard's petition in the context of his only available remedy, namely, an order directing the Parole Board to reexamine his eligibility for parole via a new parole hearing.

[6] Woodard asserts that his parole denial(s) violated his Eighth Amendment right to be free from cruel and unusual punishment. See (Doc. No. 1 at 5). However, the Eighth Amendment does not require that a prisoner "be released before the expiration of a valid prison term." See Urruita v. PA Atty. Gen., No. 13-cv-00577, 2014 WL 6982993, at *5 (M.D. Pa. Dec. 9, 2014) (citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). As such, the Court considers Woodard's challenge to the denial of parole as only a due process challenge.

expiration of a valid sentence," nor has the Commonwealth of Pennsylvania created such a right. See Greenholtz, 442 U.S. at 7; see also Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing general principle that Pennsylvania's parole statute does not create a liberty interest in the right to be paroled); Coady v. Vaughn, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the [Parole Board] have a corresponding duty to grant the same."). "Since a discretionary decision of the Parole Board denying an inmate early parole does not implicate any constitutionally [or state] protected liberty interest, the scope of federal judicial review of these decisions is necessarily quite limited." Diehl-Armstrong v. Pa. Bd. of Prob. & Parole, No. 13-cv-02302, 2014 WL 1871509, at *5 (M.D. Pa. May 7, 2014). In this regard, the role of a federal court is confined to reviewing the substance of the state parole decision to determine whether the Parole Board violated the petitioner's substantive due process rights by exercising its authority in an arbitrary and capricious, or constitutionally impermissible manner. See Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980).

To show a violation of substantive due process, a habeas petitioner must demonstrate that: (1) they were arbitrarily denied parole due to impermissible reasons such as race, religion, or political beliefs, and/or (2) the Parole Board failed to apply appropriate, rational criteria in reaching its determination to deny parole. See id. at 236; Bonsall v. Gillis, 372 F. Supp. 2d 805, 807 (M.D. Pa. 2005). "However, federal courts are not authorized by the due process clause to second-guess parole boards[,] and the requirements of substantive due process are met if there is some basis for the challenged decision." Coady, 251 F.3d at 487. The "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times

'conscience shocking' or 'deliberately indifferent.'" See Hunterson v. DiSabato, 308 F.3d 236, 247 (3d Cir. 2002) (citation omitted).

## III. DISCUSSION

Woodard contends that the Court should grant him habeas relief because the Parole Board violated his rights under the Eighth Amendment to the United States Constitution by denying him parole for "arbitrary, egregious[,] and capricious reasons" despite him completing all programs, remaining misconduct free, and maintaining a job. See (Doc. No. 1 at 5). He also asserts that the Parole Board's denial of parole "bear[s] no rational relationship to rehabilitation or deterrance [sic]." See (id.). He believes that "parole has become desensitized and dehumanizing to a degree of terrorism," and the Parole Board requiring him to remain incarcerated despite his completion of all his programming is a "waste of taxpayer's money." See (id.).

In response to Woodard's petition, Respondents argue that the Court should dismiss the petition because Woodard failed to exhaust his available state remedies. (Doc. No. 8 at 3–6.) They also argue that Woodard's petition is meritless insofar as he has not identified an Eighth Amendment violation and, even though he did not explicitly mention due process in his petition, Woodard has not shown that his due process rights were violated. (Id. at 7–11.) The Court will address each of these arguments in turn.

### A. Challenges to Prior Parole Denials

As indicated above, the Parole Board has denied Woodard parole on three occasions—on January 3, 2023, January 5, 2024, and June 20, 2024—since recommitting him to state prison on September 6, 2022. It is unclear from Woodard's petition whether he challenges only the latest parole denial or all three denials because he does not state the date of the parole denial he challenges in his petition. See (Doc. No. 1 at 1–13). To the extent that Woodard attempts to

challenge his denials of parole on January 3, 2023, and January 5, 2024, those challenges are moot.

Related to this mootness issue, the Court notes that:

> In many habeas cases, the crucial issue with respect to mootness is whether "some concrete and continuing injury other than the now-ended incarceration or parole" might still be amenable to remedy. Spencer[ v. Kemma, 523 U.S. 1, 7 (1998)]. In other words, there still may be a case or controversy before the court – even if the injury that a complaining party seeks to remedy through litigation no longer exists – if there is a "collateral injury" that is "likely to be redressed by a favorable judicial decision." Id. (quoting Lewis[ v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)]); Burkey[ v. Marberry, 556 F.3d 142, 147–51 (3d Cir. 2009)]. This is not the case, however, in the context of a parole denial or calculation. Rather, because the only relief that a court can grant in such circumstances is a new parole hearing, a subsequent hearing held by the Parole Board renders an inmate's challenge to the prior parole decision moot. See, e.g., Henderson v. Brookes, [No. 15-cv-02358,] 2017 WL 6497358, at *2 (M.D. Pa. Dec. 19, 2017) ("Given that the Board issued a decision on June 19, 2017 granting Henderson the relief sought in his petition, Henderson's petition challenging the Board's [prior] denials has been rendered moot."); Alex v. Gavin, [No. 14-cv-00261,] 2015 WL 8012825, at *3 (M.D. Pa. Dec. 7, 2015) ("As noted, the only relief we can grant would be a new parole hearing and since Alex admits he received a new hearing . . . since the filing of his habeas petition, his challenge to the denials of parole before the March 2015 decision is now moot."); Coles v. Folino, [No. 12-cv-00238,] 2014 WL 5685547[, at *2] (W.D. Pa. Nov. 14, 2014) ("Because the appropriate remedy in this case would be a new hearing before the Board, and because Petitioner has had a new hearing since the time he filed this petition, any claims challenging the denial of parole prior to [the most recent hearing] are moot.").

See Pullium v. Bd. of Prob. and Parole, No. 1:22-cv-00140, 2024 WL 3445462, at *2 (W.D. Pa. June 26, 2024); see also Sims v. Mahally, No. 17-cv-01647, 2018 WL 5718498, at *3 (M.D. Pa. Nov. 1, 2018) ("The Parole Board has issued its most recent decision to deny Petitioner parole on January 11, 2017; therefore, to the extent that Petitioner challenges the Parole Board's decisions to deny him parole [in 2008, 2009, 2010, 2011, 2012, 2013, and 2015], these claims have been rendered moot." (citations omitted)); Brown v. Kauffman, No. 18-cv-00089, 2018 WL 4087551, at *4 (E.D. Pa. Aug. 9, 2018) ("[S]ince the appropriate remedy would have been a new hearing before the Board, and because Brown has since had another hearing, any challenge to the prior

denial is now moot." (citations omitted)), report and recommendation adopted, 2018 WL 4054329 (E.D. Pa. Aug. 23, 2018). Therefore, the Court will consider only the Parole Board's most recent parole denial on June 20, 2024, when determining whether to grant Woodard habeas relief in this case.[7]

### B. Exhaustion of State Remedies

Respondents contend that the Court should dismiss Woodard's habeas petition because he did not exhaust his state-court remedies insofar as he did not file a petition for mandamus with the Pennsylvania Commonwealth Court prior to filing his habeas petition in this case. See (Doc. No. 8 at 3–6). Woodard argues that he did not need to exhaust his state-court remedies because he is challenging a parole denial. The Court agrees with Woodard.

Although a Pennsylvania state prisoner filing a habeas petition under Section 2254 is ordinarily required to fully exhaust their state-court remedies prior to filing their petition, see Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004) (explaining that state prisoners typically must fully "exhaust their claims in state court before seeking relief from the federal courts" (citing 28 U.S.C. § 2254(b)(1)(A)), the Third Circuit Court of Appeals in DeFoy v. McCollough, concluded that a state prisoner challenging the denial of parole on constitutional grounds, other than asserting an ex post facto claim, is not required to exhaust state-court remedies prior to filing a habeas petition. See 393 F.3d 439, 445 (3d Cir. 2005) ("[W]e conclude that claims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion."). In DeFoy, the Third Circuit determined that the Commonwealth Court's decision in Weaver v.

[7] Assuming arguendo that Woodard could challenge his other two parole denials in this petition, the Court's analysis and determination that he is not entitled to habeas relief applies equally to those prior denials.

Pennsylvania Board of Probation & Parole, 688 A.2d 766, 771–72 (Pa. Commw. Ct. 1997), which "held that mandamus is not available to a prisoner denied parole based upon a constitutional error by the parole board," was "the best indication of how the Pennsylvania Supreme Court would resolve the issues" raised in the case. See id. at 444.

Respondents argue that this Court should no longer follow DeFoy because since that decision, the Commonwealth Court has issued numerous decisions stating that state prisoners can file constitutional challenges to Parole Board denials of parole in mandamus actions in the Commonwealth Court's original jurisdiction. See (Doc. No. 8 at 4–5 (citing cases)). Respondents' most recent cited case is Toland v. Pennsylvania Board of Probation and Parole, in which the Commonwealth Court held that "under [its] precedent, both ex post facto and due process challenges [to the Board's denial of parole] may be raised in a mandamus action." See 263 A.3d 1220, 1233 (Pa. Commw. Ct. 2021).

As Respondents point out, some district courts in the Third Circuit have questioned "[t]he continuing validity of DeFoy." See (Doc. No. 8 at 6 (citing cases)); Begandy v. Pa. Bd. of Prob. and Parole, No. 19-cv-00639, 2021 WL 1986415, at *4 (W.D. Pa. May 18, 2021) (citing Bradley v. Wingard, No. 15-cv-00235, 2017 WL 11476608, at *2 (W.D. Pa. Oct. 12, 2017), report and recommendation adopted, 2018 WL 10150909 (W.D. Pa. Sept. 5, 2018)); (Doc. No. 8 at 7–8 (citing cases)); see, e.g., Harley v. Pa. Parole Bd., No. 25-cv-01343, 2025 WL 1873016, at *2 (E.D. Pa. July 7, 2025) (agreeing with other district courts within the Third Circuit that Toland "undercut[] the factual predicate on which DeFoy was decided" and "expanded scope of state court review," and concluding that a Section 2254 habeas petitioner "must raise due process challenges to parole board decisions in state court before petitioning for federal habeas relief"); Purcell v. Pa. Parole Bd., No. 23-cv-00311, 2024 WL 5340671, at *2 (W.D. Pa. Jan. 10, 2024) (indicating that habeas petitions challenging denials of parole "are unexhausted and can be

dismissed on that ground alone [under Rule 4 of the Rules Governing Section 2254 Cases] because [DeFoy] is no longer good law"), report and recommendation adopted, 2025 WL 240959 (W.D. Pa. Jan. 17, 2025). In doing so, those district courts essentially follow the same reasoning as Respondents' argument here, i.e., DeFoy no longer applies because the Pennsylvania caselaw it relied upon in concluding that there was no mandamus remedy for constitutional challenges has changed to the contrary over the almost twenty years since it was decided. See, e.g., Bowman v. Brittan, No. 23-cv-02092, 2024 WL 5050028, at *1 n.2 (E.D. Pa. Oct. 21, 2024) ("Based upon Toland, which DeFoy could not consider since it had yet been decided, it is clear that Petitioner had an available state court remedy; hence, he was required to comply with the exhaustion requirement.").

Nevertheless, even if these other district court decisions choosing not to follow DeFoy are correct concerning the change in Pennsylvania law recognizing that Pennsylvania inmates now have a state-court remedy they can exhaust concerning their parole-denial claims because the Commonwealth Court has recognized that constitutional claims, including due process challenges, can be raised through a petition for a writ of mandamus, the fact remains that DeFoy is a precedential Third Circuit decision that remains binding on this Court under principles of vertical stare decisis. See Pease v. Lycoming Engines, No. 10-cv-00843, 2011 WL 6339833, at *22 n.35 (M.D. Pa. Dec. 19, 2011) ("Stare decisis requires district courts to follow the binding precedents of higher courts."); Hernandez v. Johnson & Johnson Consumer Inc., No. 19-cv-15679, 2023 WL 2634496, at *3 (D.N.J. Mar. 24, 2023) ("As this is a federal district court in New Jersey, it is duty-bound to follow precedent set forth by the Third Circuit, the federally recognized circuit in which this Court sits." (citations omitted)); UTI Corp. v. Fireman's Fund Ins. Co., 896 F. Supp. 362, 379 (D.N.J. 1995) ("[A]s a federal district court, we are bound by the pronouncements of the Third Circuit Court of Appeals."); see also Hutto v. Davis, 454 U.S. 370,

375 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts . . . ."); cf. United States v. Higdon, 638 F.3d 233, 247 (3d Cir. 2011) ("[N]either this court, nor any other court, can tolerate a situation where a judge decides to follow his/her own custom and concepts of justice rather than the precedent of the applicable appellate court or the United States Supreme Court. Ours is a nation of laws, not judges."), abrogated on other grounds by Rehaif v. United States, 588 U.S. 225 (2019).

In addition, in 2012, the Third Circuit recognized that the Commonwealth Court had "adjudicated mandamus actions involving parole denials by the Board and [had] considered constitutional claims other than ex post facto claims," and yet still decided that "to the extent there has been any shift in Pennsylvania law, we cannot comfortably say that it is clear enough to alter our decision in DeFoy." See Roman v. DiGuglielmo, 675 F.3d 204, 209 (3d Cir. 2012). In deciding not to disturb DeFoy, the Third Circuit in Roman explained that:

> The availability of Pennsylvania mandamus review for inmates challenging the denial of their parole on non-ex post facto grounds remains unsettled. Though certain courts since DeFoy have demonstrated some willingness to consider constitutional claims outside the ex post facto context, none have addressed or acknowledged the language that drove our reading of Coady. See Nieves v. Pa. Bd. of Prob. & Parole, 995 A.2d 412, 418 (Pa. Commw. Ct. 2010) (substantive due process and ex post facto); Wilson v. Pa. Bd. of Prob. & Parole, 942 A.2d 270 (Pa. [Commw.] Ct. 2008) (Fifth Amendment in context of sexual offender rehabilitation program); Dodgson v. Pa. Bd. of Prob. & Parole, 922 A.2d 1023, 1026 (Pa. Commw. Ct. 2007) (due process, equal protection, Fifth Amendment, court access and ex post facto); Nickson v. Pa. Bd. of Prob. & Parole, 880 A.2d 21, 23 (Pa. Commw. Ct. 2005) (Eighth Amendment). But see Nieves, 995 A.2d at 421–22 (Leavitt, J., concurring) (citing Coady for the proposition that "mandamus will not lie" in challenges to the denial of parole and arguing that the court need not have considered the claims before it at all).

See id. at 209 n.4.

The Court acknowledges that the Third Circuit in Roman did not have the benefit of Toland and other Commonwealth Court decisions in deciding not to overrule DeFoy.

Nevertheless, a federal district court cannot decide not to follow appellate court precedent simply because it may be wrong. To the contrary, "[r]especting stare decisis means sticking to some wrong decisions. The doctrine rests on the idea . . . that it is usually 'more important that the applicable rule of law be settled than that it be settled right.'" See Kimble v. Marvel Entmt., LLC, 576 U.S. 446, 455 (2015) (quoting Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting)).

In conclusion, if the Court were to adopt Respondents' argument and no longer follow DeFoy, Woodard's habeas claims pertaining to his parole denial in March 2025 should be dismissed for failure to exhaust because he did not file a petition for a writ of mandamus with the Commonwealth Court in which he challenged the Parole Board's denial of parole and, if the Commonwealth Court denied the petition, filed a petition for allowance of appeal with the Pennsylvania Supreme Court. See, e.g., Williams v. Wynder, 232 F. App'x 177, 181 (3d Cir. 2007) (unpublished) (concluding that, to fully exhaust a challenge to the Parole Board's decision to revoke parole, a habeas petitioner must seek allowance of appeal in the Pennsylvania Supreme Court after an adverse decision by the Commonwealth Court).[8] Nonetheless, as the Court must continue to follow DeFoy, Woodard did not need to fully exhaust his challenges to his parole denials through the state courts, and the Court will consider the merits of his challenge to his June 20, 2024 parole denial here.[9]

---

[8] This reasoning would be equally applicable to any prior parole denials, to the extent they are not moot, as it does not appear that Woodard filed any petitions for mandamus with the Commonwealth Court following those denials of parole.

[9] Some district courts decline to address the exhaustion issue in Section 2254 habeas cases involving challenges to parole denials if the petitioner's habeas claims lack merit. See Strother v. Pa. Bd. of Parole, No. 24-cv-00157, 2025 WL 2050200, at *1 (W.D. Pa. July 22, 2025) ("A court . . . 'may bypass the exhaustion issue altogether should [it] decide that the petitioner's habeas claim fails on the merits.'" (alteration in original) (quoting Roman, 675 F.3d at 209)); see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

### C. The Merits

The Parole Board has vast discretion to refuse or deny parole. See 61 Pa. C.S. § 6137(a)(1) (stating that, inter alia, the Parole Board "may release on parole any offender to whom the power to parole is granted to the board by this chapter, . . . whenever in its opinion: (i) The best interests of the offender justify or require that the offender be paroled. (ii) It does not appear that the interests of the Commonwealth will be injured by the offender's parole"). The record clearly reflects that the Parole Board based its parole determination here on factors that it is statutorily required to consider in accordance with 61 Pa. C.S. § 6135. See McGinnis v. Royster, 410 U.S. 263, 277 (1973) (holding that there is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole"). Under Section 6135, the Parole Board must consider:

> (1) The nature and circumstances of the offense committed.
>
> (2) Any recommendations made by the trial judge and prosecuting attorney.
>
> (3) The general character and background of the inmate.
>
> (4) Participation by an inmate sentenced after February 19, 1999, and who is serving a sentence for a crime of violence as defined in 42 Pa. C.S. § 9714(g) (relating to sentences for second and subsequent offenses) in a victim impact education program offered by the Department of Corrections.
>
> (5) The written or personal statement of the testimony of the victim or the victim's family submitted under section 6140 (relating to victim statements, testimony and participation in hearing).
>
> (6) The notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available.

---

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007) ("[B]ecause we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

> (7) The conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record.

See 61 Pa. C.S. § 6135(a)(1)–(7).

In this case, Woodard has not pointed to any impermissible factor the Parole Board relied on, or any factor that could be described as conscience shocking or deliberatively indifferent. In fact, he does not address any of the Parole Board's reasons for denying him parole in June 2024, such as his (1) "risk and needs assessment indicating his level of risk to the community," (2) "prior unsatisfactory supervision history," (3) "failure to demonstrate motivation for success," (4) "minimization/denial of the nature and circumstances of the offense(s) committed," (5) "refusal to accept responsibility for the offense(s) committed," (6) "lack of remorse for the offense(s) committed," and (7) reports, evaluations and assessments showing that he remained a risk to the community. Instead, he focuses only on having completed all required programming while incarcerated. See (Doc. No. 1 at 5). This disagreement does not entitle him to habeas relief.

By merely disagreeing with the Parole Board's analysis and asserting that it should have done more when considering whether to grant him parole, Woodard is essentially requesting that the Court second-guess the Parole Board, something that the Court cannot do. See Coady, 251 F.3d at 487. The Parole Board explained to Woodard that it reached the decision to deny him parole after interviewing him, reviewing his file, and considering "all matters" in the Code. (Doc. No. 8-1 at 53.) It also provided "some basis" for its decision insofar as it provided seven minimally detailed reasons for denying parole, see (id.), none of which were based on impermissible factors. Overall, Woodard has failed to meet his burden of demonstrating that the

Parole Board violated his constitutional rights in denying parole in June 2024. Accordingly, the Court will deny his Section 2254 petition.

### D. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of [their] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Because reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA. Thus, the Court will decline to issue a certificate of appealability, as Woodard has failed to demonstrate "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## IV. CONCLUSION

For the reasons set forth above, the Court will deny Woodard's Section 2254 habeas petition, decline to issue a certificate of appealability, and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania